IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NEW WORLD TECHNOLOGY II, LLC,<br><br>     Plaintiff,<br><br>     v.<br><br>HUBERT HO, CONROY CHENG, HAO YUAN CHEN a/k/a ROCKY HAO-YUAN CHEN, and SHI HU a/k/a ECHO SHI HU<br><br>     Defendants,<br><br>and<br><br>MEDICAL TECHNOLOGY ASSOCIATES II, INC.<br><br>     Nominal Defendant | Civil Action No. |

## COMPLAINT

Plaintiff New World Technology II, LLC ("NWT II") by its attorneys, the Ferrara Law Group, P.C., hereby files this Complaint against Defendants Conroy Cheng ("Cheng") Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen ("Rocky"), Shi Hu a/k/a Echo Shi Hu ("Echo"), and Hubert Ho ("Ho") (collectively "Defendants") and Nominal Defendant Medical Technology Associates II, Inc. ("MTA2") as follows:

## PARTIES

1.     Plaintiff New World Technology II, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its main office located in New York, New York.

2.      Defendant Conroy Cheng is an adult individual residing in Hong Kong, China. Upon information and belief, Cheng is a citizen of the People's Republic of China.

3.      Defendant Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen is an adult individual residing in Beijing, China.  Upon information and belief, Chen is a citizen of the People's Republic of China.

4.      Defendant Shi Hu a/k/a Echo Shi Hu is an adult individual residing in Hong Kong, China.  Upon information and belief, Hu is a citizen of the People's Republic of China.

5.      Defendant Hubert Ho is an adult individual residing in Los Angeles, California. Upon information and belief, Ho is a citizen of the United States.

6.      Nominal Defendant Medical Technology Associates, Inc. ("MTA2") is a corporation organized and existing under the laws of the State of Delaware, with an office located at 275 Great Valley Parkway, Malvern, PA 19355.

## JURISDICTION

7.      This Court has subject matter jurisdiction over this case on diversity grounds pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties.

8.      This Court has personal jurisdiction over Defendants Ho, Cheng, Rocky, and Echo because the Defendants currently control and operate the Nominal Defendant, which is headquartered in and does business in Pennsylvania.

## FACTS

9.      Carl W. Rausch ("Rausch") is an inventor with a long history of creating various technologies used in the therapeutic protein purification in the biotechnology and medical field.

2

10.     In 1978, Rausch began developing process technology for "artificial blood" that became defined as hemoglobin-based oxygen carriers as a substitute for blood transfusions (the "Technology").

11.     Rausch created a company named World Technology East II, Limited ("WTE2") in 2015 in Hong Kong, China to develop, patent, and market this technology and its applications.

12.     Rausch was the sole shareholder of WTE2 at the time of its founding and remains its sole shareholder to this day. Mr. Cheng was a secretary and collaborator with Mr. Rausch.

13.     However, in order to gain FDA approval for use of that technology in the United States, it was necessary to license the technology to a United States-based company.

14.     To that end, Rausch created MTA2 in 2015 as well.  MTA2 was originally located in New Hampshire.

15.     At the time of its incorporation, Rausch was also the sole shareholder of MTA2 with Mr. Cheng as a listed Secretary.

16.     Rausch later transferred all of his shares of MTA2 to NWT.  This occurred on or about January 2019.

17.     Rausch had previously collaborated with Conroy Cheng through mutual colleagues in 2010-2015 in various venture development and Mr. Rausch had also been consulting for an allied Hong Kong Company known to Mr. Cheng in the area of protein research and purification and therapeutic development.

18.     Since 2010, Rausch and Conroy Cheng ("Cheng") were involved in allied ventures.  One such venture was called Boston Therapeutics, Inc. ("BTI"), and another in Hong

Kong, was a licensing group called Sugardown Company Limited.  Mr. Cheng had invested considerable sums into both entities and was at the time a major shareholder of BTI and controlling shareholder Sugardown.  BTI is a corporation organized under the laws of Delaware with a recent business address in Lawrence, Massachusetts.  At the time, BTI was a publicly traded corporation listed on the OTC Markets Group (stock sign BTHE).  It also had a conjugated Hemoglobin-Glactomannan technology in which Rausch had assisted in securing a patent for Boston Therapeutics and for Sugardown Company Limited.

19.      In 2015, given an opportunity to participate in a hemoglobin therapeutic process technology development, Cheng initially offered to invest $5 million into MTA2  in exchange for approximately 50% outstanding shares of MTA2. At this time Rausch was already in a fee for service relationship with Conroy Cheng for Sugardown overseeing the US and Asia development and license arrangement with Boston Therapeutics Inc.

20.      Mr. Rausch and Mr Cheng agreed and with the completion of a fund raising for Boston Therapeutics in August of 2016. Mr. Rausch became CEO of that entity.

21.      With secured funding for the Boston Therapeutics operation in 2016 and Rausch as CEO (as confirmed in SEC filings), Cheng's and Rausch's original plan of funding MTA2 changed to a merger between BTI and MTA2 in order capitalize the entity so as to aggressively work in concert with a potential Chinese licensing partner company, Redpharm (Beijing) Biotechnology Co., Ltd. ("Redpharm"). This formation was to build a facility for the development and  manufacture of the process technology in Qingdao, China.  This was proposed in stages. First a pilot demonstration and then a development and licensing collaboration for Redpharm.

22.     This BTI merger would be subject to the required valuation and assessment by an independent assessor and acceptable by the independent board member of Boston Therapeutics Inc. The assessment was performed in November 2016 and resulted in an approximate $60 million FMV (fair market) valuation placed on MTA2.   However, Boston Therapeutics was also subject to assessment in the marketplace for the purposes of that merger.

23.     Cheng's initial offer to merge BTI with MTA2 was to create a supporting public structure for the latter through partial offering of capital necessary to support the construction of a facility in the United States.

24.     However, with multiple delays and before Cheng was able to do so, BTI became insolvent, rendering it impossible to merge with MTA2 for the purpose that MTA2 required.

25.     Due to various Redpharm plant missed construction deadlines, Chinese customs issues regarding equipment for the Qingdao site arose. Redpharm had difficulty working locally in Qingdao and development plans in China were changed as WTE2 was not permitted to import equipment necessary to support the licensed process that would confirm facility compliance to FDA standards.   To assure this FDA compliance and save regulatory review time and assure process integrity, Redpharm, MTA2, and WTE2 collectively decidedly to build a documented "model" hemoglobin parenteral facility in the United States under MTA2 US registration.

26.     In order to build such a plant, MTA2, which as of 2017 had no employees or equipment of its own, much less a physical space, required a capital investment.

27.     As a result, Cheng offered to invest $5 million, in MTA2.  This $5 million was in exchange for approximately 5% outstanding shares of MTA2.

28.     In reliance upon Cheng's multiple options and representation that he would invest $5 million into MTA2, Rausch issued 15 million shares to Cheng on or about September 6,

2017 and also confirmed him a seat on MTA2's board of directors at the completion of the B round of financing.

29.     However, Cheng never actually invested any of the initial $5 million money considerations into MTA2 nor did he complete the merger with MTA2.

30.     Instead, Cheng began to use his commitment to invest the initial $5 million into MTA2 as leverage to extract payments from Rausch, through WTE2, to Boston Therapeutics, CJY (another company owned by Cheng), and also forced WTE2 to execute a retroactive funding engagement agreement whereby WTE2 acknowledged certain retroactive obligations to various companies, as well as invest certain amounts into Nanomix (another company involved in this development process) on behalf of Redpharm.

31.     In truth, Cheng was using these payments as leverage for two purposes.

32.     First, Cheng took advantage of these the payments to BTI in order increase the return on his investment in Boston Therapeutics to pump up the value of the company so that he could find an appropriate merger partner.  He was ultimately able to find such a merger partner in 2021.

33.     Second, Cheng was using the payments to Redpharm in order to entice two board members of that entity, Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen ("Rocky") and Shi Hu a/k/a Echo Shi Hu ("Echo"), to invest in MTA2 for the purpose of initiating a hostile takeover of that entity.

34.     Because MTA2 was short on capital due to Cheng's failure to invest the promised sums, and it was necessary for MTA2 to support the $1.6 million equipment funding from Redpharm, Rausch had no choice but to seek additional investors and thus post the issued

Series A investment rounds from September 2017 to October 2019 and the Series B investment rounds in 2018-2019.

35.     Cheng, as part of his scheme to take control of MTA2, recruited Rocky and Echo to participate in the final July 2019 and October 2019 rounds of financing.

36.     The end result of those rounds of financing was that Rausch was no longer the controlling shareholder of MTA2.  Instead, he owned approximately 45% of that company.  Cheng, Rocky, and Echo owned the remaining shares.

37.     Additionally, as of 2019, the board of MTA2 was composed of four members – Rausch, Cheng, Rocky, and Echo.  Rausch was at the time the acting president and CEO of MTA2 and still the CEO of the tentative merger of Boston Therapeutics.

38.     MTA2 and Redharm, after the 2016-2017 proof of concept phase of technology transfer and exchange to do the laboratory scale of the Oxyglobin like material, executed a development and licensing agreement with specificity as to territory and as to development cost sharing (the "Redpharm DLA").

39.     As part of that agreement, Redpharm was obligated to make certain equity payments for preferred stock and services payments to MTA2 for services rendered on Redpharm's behalf.

40.     However, Redpharm failed to keep current on its obligations.

41.     Rausch repeatedly requested authorization from the board of MTA2 to take appropriate steps to seek collection of sums due and owing to MTA2 from Redpharm.

42.     Rausch also proposed new financial partners and the redo of the Development and License Agreement so that all parties could achieve success of getting a product and process registered.

43.     Despite an obvious conflict of interest since they were both investors in Redharm and board members of that entity, both Rocky and Echo refused to authorize Rausch to take such steps.

44.     Ultimately, Cheng, Rocky, and Echo decided to terminate Rausch as president and CEO of MTA2 and did so at a December 11, 2019 board meeting.  Ho, who had been an Executive Vice President of MTA2 was elevated to Acting President and, in February 2020, was made Chief Operating Officer of MTA2.

45.     After the board meeting, Rausch was shut out of all MTA2 activities and the MTA2 electronic records of regulatory, finance, and clinical, preclinical, vendor and legal counsel. This was in spite of the fact that NWT remained (and remains to this day) a 45% shareholder of MTA2.

46.     As the controlling interest-holder of NWT, Rausch has made numerous requests to view MTA2's books and records as is his right under Delaware law.

47.     However, MTA2 has refused to provide any of the requested information to Rausch.

48.     Additionally, despite the fact that significant sums were due and owing to WTE2 pursuant to the Redpharm-MTA2-MSA, MTA2 has refused to pay any additional sums to WTE2.

49.     As a result, Rausch had little choice but to resign as a director of MTA2.

50.     Since Cheng, Rocky, and Echo took control of MTA2 in December 2019, they have repeatedly failed to protect the company's interests and have jeopardized both WTE2 and MTA2's ability to obtain FDA approval for Rausch's inventions.

51.     Cheng, Rocky, Echo, and Ho, acting through MTA2, have allowed MTA2's sublicensee to construct facilities and produce developmental duplicate products that are not in compliance with FDA requirements and the appropriated ISO standards.

52.     Cheng, Rocky, Echo, and Ho, acting through MTA2, also have failed to document and report appropriately to required quality standards of a pharmaceutical development enterprise as required by the Development and License Agreement between Redpharm and MTA2.

53.     Defendants have also failed to protect MTA2's intellectual property by permitting Redpharm, which is party to a development and license agreement with MTA2, to avoid meeting its obligations toward MTA2.

54.     As part of that development and licensing agreement, Redpharm was obligated to make certain payments to MTA2 in exchange for certain technology and products that were in turn licensed to MTA2 by WTE2.

55.     Defendants were also fully aware that Redparm has failed to ensure, through commercially reasonable efforts, that its facility meets FDA cGMP standards and has refused to comply with cGMP standards in the construction and build-out of its China-based facility, as required by the development and licensing agreement.

56.     Redpharm further breached the DLA by refusing to allow MTA2 to monitor and advise on its scientific development strategies and refusing to follow instructions designed to ensure such compliance for biologic product quality.

57.     Pursuant to DLA, MTA2 has the right to audit quality assurance of the Redpharm facility, and its audits have demonstrated that Redpharm's facility is not compliant with either FDA or EMA standards as required by the DLA.

58.     Defendants' failures to ensure compliance with various regulations as well as their failure to address Redpharm's material breaches of the DLA have irreparably impaired MTA2's reputation with the FDA, and forever damaged MTA2's ability to secure regulatory approval of any product at its Malvern facility.

59.     When Rausch was acting president and CEO of MTA2, he repeatedly raised these issues with the Board and expressed concern that Defendants were jeopardizing MTA2's business.

60.     Defendants, however, ignored Rausch's  concerns. Their refusal to listen to Rausch was due, at least in part, to the fact that Rocky and Echo were, at the time, shareholders of Redpharm.  Defendants ultimately terminated Rausch as president and CEO so that they could continue to enrich themselves and their other companies at MTA2's expense.

61.     NWT brings certain claims derivatively in the right and for the benefit of MTA2 to redress injuries suffered, and to be suffered, by MTA2's as a direct result Defendants' mismanagement and fraudulent activity.

62.     NWT is a shareholder of MTA2, was a shareholder of MTA2 at the time of the wrongdoing alleged herein, and has been a shareholder of MTA2 continuously since that time.

63.     MTA2 is named as a nominal defendant in these third-party claims solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.  Prosecution of this action, independent of the controlling interests of Cheng, Rocky, Echo, and Ho, is in the best interests of MTA2.

64.     The wrongful acts complained of herein subject, and will continue to subject, MTA2 to continuing harm because the adverse consequences of the actions are still in effect and ongoing.

65.     Additionally, Rausch repeatedly has demanded that, *inter alia*, Cheng make payment of the $5 million that agreed to pay in exchange for his shares of MTA2 as well as his board seat, and also that Defendants authorize him to take appropriate action to assert MTA2's rights against Redpharm with regard to the DLA.

66.     Defendants have repeatedly refused to comply with Rausch's requests and in fact instituted a separate suit against Rausch seeking declaratory judgment regarding certain intellectual property developed by Rausch and asserting additional claims for breach of fiduciary duty, fraud, unjust enrichment, and conversion.  All of these claims are based upon false factual allegations and are designed to serve as a smoke-screen for Defendants' own wrongdoing.

67.     As a result of the facts set forth herein, NWT has not made any further demand on Defendants to institute this action since demand would be a futile and useless act.

68.     Defendants are incapable of making an independent and disinterested decision to institute and vigorously prosecute this action, especially in light of their wrongdoing.

69.     The wrongful acts complained of herein show multiple breaches by Defendants of their individual fiduciary duties of loyalty, due care, and oversight.

70.     Defendants have benefited, and will continue to benefit, from their illegal schemes alleged herein and are incapable of exercising independent objective judgment in deciding whether to bring this action.

71.     Since Defendants hold an illegitimate controlling interest in MTA2, and have initiated a baseless lawsuit against Rausch, such a demand would be futile and pointless

## <u>COUNT I</u>
### (Breach of Fiduciary Duty – Direct Claim - NWT against all Defendants)

72.     Plaintiff incorporates the preceding paragraphs as it set forth fully herein.

73.     Defendants, in bad faith, have knowingly, willfully, and recklessly violated fiduciary duties of good faith, loyalty, and due care owed to NWT and have put their own personal interests ahead of the interests of NWT, to whom, as board members, they owed a duty as a shareholder of MTA2.

74.     As board members of MTA2, Cheng, Rocky, and Echo owe fiduciary duties of care, loyalty, and good faith to the other shareholders of that company such as NWT.  As an officer of MTA2, Ho also owes fiduciary duties of care, loyalty, and good faith to the shareholders of that company such as NWT

75.     Defendants' fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation of MTA2's respective businesses, to discharge their actions in good faith, to act in the best interests of MTA2 and NWT, and to put the interests of MTA2 above their own.

76.     As set forth above, Cheng, Rocky, Echo, and Ho breached their fiduciary duty of care by among other things, routinely mismanaging MTA2.

77.     As set forth above, Cheng, Rocky, Echo, and Ho breached their fiduciary duties of good faith and loyalty by refusing to assert MTA2's contractual rights against Redpharm for their own personal benefit and also by destroying MTA2's product and process with regard to FDA integrity.

78.     Rausch has been damaged by Defendants' breach of their fiduciary duties.

**WHEREFORE**, Plaintiff New World Technology II, LLC respectfully requests that this Honorable Court enter judgment in its favor and against Defendants Conroy Cheng, Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen, and Shi Hu a/k/a Echo Shi Hu, and Hubert Ho in an amount

exceeding $1,000,000 plus consequential and incidental damages, interest, attorneys' fees, costs of suit, punitive damages, and such other relief that this Court deems just and proper.

## COUNT II
### (Breach of Fiduciary Duty – Derivative Claim against Defendants)

79.     Plaintiff incorporates the preceding paragraphs as it set forth fully herein.

80.     Defendants, in bad faith, have knowingly, willfully, and recklessly violated fiduciary duties of good faith, loyalty, and due care owed to MTA2 and have put their own personal interests ahead of the interests of the respective companies.

81.     As board members of MTA2, Cheng, Rocky, and Echo owe fiduciary duties of care, loyalty, and good faith to MTA2.  As an officer of MTA2, Ho also owes fiduciary duties of care, loyalty, and good faith to MTA2.

82.     Defendants' fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation of MTA2's respective businesses, to discharge their actions in good faith, to act in the best interests of MTA2, and to put the interests of MTA2 above their own.

83.     As set forth above, Defendants breached their fiduciary duty of care by among other things, routinely mismanaging MTA2.

84.     As set forth above, Defendants breached their fiduciary duties of good faith and loyalty by refusing to assert MTA2's contractual rights against Redpharm for their own personal benefit.

85.     MTA2 has been damaged by Defendant's breach of their fiduciary duties.

**WHEREFORE**, Plaintiff New World Technology II, LLC, on behalf of Nominal Defendant Medical Technology Associates II, Inc., respectfully requests that this Honorable Court enter an order holding Defendants Conroy Cheng, Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen,

Shi Hu a/k/a Echo Shi Hu, and Hubert Ho personally responsible for any judgment or settlement incurred by either MTA2 against any third party arising from their breaches of fiduciary duty, and also enter judgment in its favor and against Defendants Conroy Cheng, Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen, Shi Hu a/k/a Echo Shi Hu, and Hubert Ho in an amount exceeding $1,000,000 plus consequential and incidental damages, interest, attorneys' fees, costs of suit, punitive damages, and such other relief that this Court deems just and proper.

<u>**COUNT III**</u>
**(Fraudulent Inducement – Derivative Claim against Cheng)**

86.     Plaintiff incorporates the preceding paragraphs as it set forth fully herein.

87.     As set forth above, Cheng made material misrepresentations and omissions to Rausch and MTA2 of presently existing or past facts including, *inter alia*, his intention to invest in MTA2.

88.     Cheng knew that said misrepresentations and omissions were false, but intended that Rausch and MTA2 rely on them and that Cheng obtain an undue advantage therefrom.

89.     Rausch, as the sole shareholder of MTA2 at that time, relied on said misrepresentations and omissions to his detriment and as set forth above, caused MTA2 to issue approximately 13% of all outstanding shares to Cheng as well as a board seat.

90.     As a direct and proximate result, MTA2 has been damaged.

**WHEREFORE**, Plaintiff New World Technology II, LLC, on behalf of Nominal Defendant Medical Technology Associates II, Inc., respectfully requests that this Honorable Court enter an order holding Defendant Conroy Cheng personally responsible for any judgment or settlement incurred by either MTA2 against any third party arising from their breaches of fiduciary duty, and also enter judgment in its favor and against Defendant Conroy Cheng in the amount of

$5,000,000 plus consequential and incidental damages, interest, attorneys' fees, costs of suit, punitive damages, and such other relief that this Court deems just and proper.

**COUNT IV**
**(Promissory Estoppel – Derivative Claim against Cheng)**

91.     Plaintiff incorporate the preceding paragraphs as it set forth fully herein.

92.     Cheng promised to invest $5 million in MTA2.

93.     Cheng made that promise with the expectation that Rausch, as the president, CEO, and sole shareholder of MTA2 at that time, would issue 13% of all outstanding stock and a board seat to Cheng.

94.     Rausch, as the president, CEO, and sole shareholder of MTA2 at that time, reasonably relied on Cheng's promise and caused MTA2 to issue approximately 13% of all outstanding shares to Cheng as well as a board seat.

95.     However, Cheng has failed to invest the $5 million as promised.

96.     As a result of Cheng's breach, MTA2 has been damaged.

**WHEREFORE**, Plaintiff New World Technology II, LLC, on behalf of Nominal Defendant Medical Technology Associates II, Inc., respectfully requests that this Honorable Court enter an order holding Defendant Conroy Cheng personally responsible for any judgment or settlement incurred by either MTA2 against any third party arising from their breaches of fiduciary duty, and also enter judgment in its favor and against Defendant Conroy Cheng in the amount of $5,000,000 plus consequential and incidental damages, interest, attorneys' fees, costs of suit, punitive damages, and such other relief that this Court deems just and proper.

**COUNT V**
**(Conversion – Derivative Claim against all Defendants)**

97.     Plaintiff incorporate the preceding paragraphs as it set forth fully herein.

98.      As aforestated, Cheng, Rocky, and Echo all intentionally engaged in various schemes to misappropriate the cash, assets, resources, and services of MTA2 for their benefit and with the intent to deprive MTA2 of its rights and interest in said cash, assets, resources and services.  Ho aided and abetted these actions.

99.      MTA2 is entitled to immediate possession of all property and monies taken by Defendants that is rightfully owed to them.

100.      Defendants have wrongfully interfered with MTA2's right to the aforementioned property and monies.

101.      As a direct and proximate result of the Cheng, Rocky, and Echo's theft and conversion, MTA2 been damaged.

**WHEREFORE**, Plaintiff New World Technology II, LLC, on behalf of Nominal Defendant Medical Technology Associates II, Inc., respectfully requests that this Honorable Court enter an order holding Defendants Conroy Cheng, Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen, Shi Hu a/k/a Echo Shi Hu, and Hubert Ho personally responsible for any judgment or settlement incurred by either MTA2 against any third party arising from their breaches of fiduciary duty, and also enter judgment in its favor and against Defendants Conroy Cheng, Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen, Shi Hu a/k/a Echo Shi Hu, and Hubert Ho in an amount exceeding $1,000,000 plus consequential and incidental damages, interest, attorneys' fees, costs of suit, punitive damages, and such other relief that this Court deems just and proper.

## COUNT VI
**(Usurpation of Corporate Opportunity – Derivative Claim against Cheng, Rocky, and Echo)**

102.      Plaintiff incorporates the preceding paragraphs as it set forth fully herein.

103.     As aforestated, Defendants had a fiduciary duty to act in the best interests of MTA2.

104.     Defendants violated that duty by utilizing their positions to divert company resources away from MTA2 for their own personal benefit

105.     As a direct and proximate result of the Defendants usurpation of corporate opportunities, MTA2 has been damaged.

**WHEREFORE**, Plaintiff New World Technology II, LLC, on behalf of Nominal Defendant Medical Technology Associates II, Inc., respectfully requests that this Honorable Court enter an order holding Defendants Conroy Cheng, Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen, Shi Hu a/k/a Echo Shi Hu, and Hubert Ho personally responsible for any judgment or settlement incurred by either MTA2 against any third party arising from their breaches of fiduciary duty, and also enter judgment in its favor and against Defendants Conroy Cheng, Hao Yuan Chen a/k/a Rocky Hao-Yuan Chen, Shi Hu a/k/a Echo Shi Hu, and Hubert Ho in an amount exceeding $1,000,000 plus consequential and incidental damages, interest, attorneys' fees, costs of suit, punitive damages, and such other relief that this Court deems just and proper.

### COUNT VII
### (Unjust Enrichment – Derivative Claim against Cheng)

106.     Plaintiff incorporates the preceding paragraphs as it set forth fully herein.

107.     As described above, MTA2 bestowed benefits upon Cheng by, *inter alia*, issuing 13% of all outstanding stock as well as a board seat to Cheng.

108.     While Cheng has retained the benefit provided by MTA2, at no time did Cheng provide a reciprocal benefit to MTA2 in exchange.

109.     Retention of the benefits by Cheng would be unjust.  As a result, Cheng has been unjustly enriched.

17

**WHEREFORE**, Plaintiff New World Technology II, LLC, on behalf of Nominal Defendant Medical Technology Associates II, Inc., respectfully requests that this Honorable Court enter an order holding Defendant Conroy Cheng personally responsible for any judgment or settlement incurred by either MTA2 against any third party arising from their breaches of fiduciary duty, and also enter judgment in its favor and against Defendant Conroy Cheng in the amount of $5,000,000 plus consequential and incidental damages, interest, attorneys' fees, costs of suit, punitive damages, and such other relief that this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

NWT hereby demands a jury trial on all issues and claims so triable.


**FERRARA LAW GROUP, P.C.**


Dated:  December 10, 2021

BY:*/s/ Aaron L. Peskin*
AARON L. PESKIN, ESQUIRE
Attorney for Defendants
1 Holtec Drive, Suite G102
 Marlton, NJ  08053
(609) 571-3738

*Attorneys for Plaintiff New World Technology II, LLC*